**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

RACE TIRES AMERICA, INC., a Division )
OF SPECIALTY TIRES OF AMERICA, INC.; )
SPECIALITY TIRES OF AMERICA, INC.; )
SPECIALTY TIRES OF AMERICA )
(PENNSYLVANIA), INC.; and SPECIALTY )
TIRES OF AMERICA (TENNESSEE), LLC, )
                                 )
          Plaintiffs, )
                                 )
          v. )          02: 07cv1294
                                 )
HOOSIER RACING TIRE CORP., and )
DIRT MOTOR SPORTS, INC., d/b/a )
WORLD RACING GROUP, )
                                 )
          Defendants. )

**MEMORANDUM ORDER**

        Presently pending before the Court is the MOTION TO COMPEL INFORMATION

AND DOCUMENTS IN RESPONSE TO WRITTEN DISCOVERY filed by Hoosier Racing

Tire Corp. ("Hoosier"), with brief in support (Document Nos. 50 and 51), the BRIEF IN

OPPOSITION filed by Plaintiffs (collectively referred to as "STA") (Sealed Document No. 55),

and the REPLY BRIEF filed by Hoosier (Document No. 58).

        Distilled to its essence, the current dispute involves the non-production of two (2)

general categories of requested information: (i) STA documents for the time period "in the

1970s" up to January 1, 1995, wherein "STA proposed and encouraged race tracks and

promoters to adopt spec tire or track rules"; and (ii) STA documents and information on "all

types of tires."

        STA argues that Hoosier's request for information dating back "to the 1970s" is not

relevant "to the exclusive tire rules which are imposed on racer-consumers through Hoosier's

exclusive contracts" and that requests for information on "all types of tires" is "far outside the realm of reasonable discovery and not based on any showing of reasonable interchangeability by race drivers-consumers." The arguments will be addressed seriatim.

A.       STA Documents Dating Back to the 1970's

Hoosier has requested all contracts, agreements, drafts, bids, offers, proposals, communications, and other documents with or from race sanctioning companies, race track owners, race promoters, tire distributors, tire dealers, suppliers, racing drivers, driver teams, "other group[s] of racers," . . . from the 1970s until the present. STA has agreed to provide such documentation, subject to its general objections, which include limiting production to the "time period January 1, 1995 to present."

Hoosier posits two reasons why the STA pre-1995 documents and information are relevant and likely to lead to the discovery of admissible evidence. First, on STA's own website, STA claims to have formulated spec tire rules in the 1970s:

> In the 1970's, Joe Jacobs, the developer of the race tire business that eventually became Race Tires America, proposed and encouraged race tracks and promoters to adopt spec tire or track tire rules. . . .
>
> Initially, competition between tire suppliers was not impeded by spec tire rules. . . . Actually, spec tire rules enhanced competition because tire rule arrangements between tire suppliers and track promoters typically for the duration of a single season; tires were selected after objective tests were conducted using criteria established by a promoter or group of racers; and normally, because the dirt track racing industry was fragmented and without large rulemaking organizations, agreements covered only one or a small number of tracks.
>
> However, in recent years, the purposes and effect of spec tire rules have changed. . . .

Hoosier's Memo., Exhibit C.

Second, in the early 1990's, STA and two of its distributors negotiated and won the bid to have its tires (then known under the name "McCreary") to be the spec tire for DIRT Motor Sports, Inc., d/b/a World Racing Group ("DMS") "on the strength of a huge $216,000 bid, almost doubling the offers from their competition." (See Ex. D.; article in *Trackside* about STA's successful spec tire bid for the 1994 season.)[1]

Hoosier argues that STA has a long history and established model of selling tires pursuant to exclusive agreements and encouraging the promulgation of single tire manufacturing rules. Yet, in the instant litigation STA alleges that the exclusive agreements of Hoosier pursuant to single tire manufacturer rules violate antitrust laws. Therefore, according to Hoosier, the 1970s STA documents are relevant both to the denial of the claims alleged against Hoosier and to its affirmative defenses of laches, waiver, equitable estoppel, the statute of limitations, and an "in pari delicto" defense. Hoosier Br. at 10.

STA responds that its pre-1995 documents are beyond the statute of limitations and that the pre-1995 documents reflect the competitive market structure which existed thirty (30) years ago, not the competitive market structure which exists today. Further, STA argues that "[t]he 1995 time limit is rationally based on Plaintiffs' approximation of the time frame in which Hoosier began to obtain monopoly power and enter into conspiracies with major sanctioning companies to exclude all competitors from the dirt oval track market." STA's Br.

_____

[1] STA responds that it was not a party to the 1994 agreement, which involved one of STA's distributors, not STA.

3

at 14.  STA also disputes that the 1970s documents are relevant to any of Hoosier's affirmative defenses.

It appears to the Court that there is no way to compromise this issue.  STA has determined that the appropriate time frame is 1995 to the present; Hoosier argues that the relevant time period is 1970 to the present and that the documents from the 1970s  are relevant to disproving STA's claims against it and also are separately relevant to Hoosier's affirmative defenses.  STA has brought significant anti-trust allegations against Hoosier; and in an attempt to disprove these claims, Hoosier seeks to show that single manufacturer spec tire rules, such as those "proposed and encouraged" by STA in the 1970s, have significant pro-competitive justifications that outweigh the effect of any restraint on competition.  After a thorough review of the exhaustive briefs and exhibits which have been produced by the parties, the Court finds and rules that Hoosier is entitled to STA documents and information for the time period 1970 to the present.

Whether or not the produced documents are ultimately admissible as evidence at trial is a decision for another day.

B.      STA Documents Which Relate to "All Types of Tires"

Hoosier has requested production of information on all STA tires which are "used on two, three, four or multiple-tired motor vehicles, including but not limited to any automobile, kart, motorcycle, ATV, off-road vehicle, aircraft, light truck, heavy truck, farm equipment, industrial and material handling equipment, mining vehicle, military vehicle, or construction vehicle, or any other motorized vehicle."   STA produced, in part, such information, but only as

it pertained to "dirt oval track races, race tracks or drivers" on the grounds that information on any other tire is not relevant. According to STA, it makes dozens of different types of "specialty" tires, for farm machinery and equipment, military vehicles, underground mining equipment, aircraft, antique "collector cars," in addition to making dirt racing tires and other types of racing tires.

Hoosier responds that documents and information on all of STA's tires and all racing venues are relevant both as to proving the relevant antitrust market and barriers to entry, and to showing the pro-competitive benefits spec tire rules provide for all types of races.

STA alleges that the relevant market is "the sale of racing tires for cars that race on dirt oval tracks." Second Amended Complaint, ¶ 6. Hoosier maintains that this market definition is too narrow, and suggests that the relevant market is the sale of "tires" generally, "or at the very least the sale of 'racing tires'." Hoosier Br. at 12. However, defining the applicable relevant market is something this Court is not able or willing to do at this early stage of the litigation. *Kellam Energy, Inc. v. Duncan,* 616 F. Supp. 215, 219 (D.C. Del.1985) ("certainly it would be inappropriate to preclude discovery by imposing a narrow market definition at this stage of the proceedings . . .") A "proper market definition can be determined only after a factual inquiry into the commercial realities . . ." *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 436 (3d Cir. 1997). Accordingly, the Court finds that the appropriate definition of "relevant market" can not be resolved at this time.

However, regardless of how the relevant market is ultimately defined in this action, the Court finds that Hoosier's argument that the relevant market is the sale of all "tires" generally is too broad. The Court finds that the most reasonable compromise at this early stage

of the litigation is that Hoosier is entitled to all information and documentation regarding STA "racing tires," whether they are used exclusively on dirt oval tracks or not, and shall include those tires manufactured for private label brands.

In conclusion, the Court finds that Hoosier's requests are relevant and reasonably calculated to lead to the discovery of admissible evidence. Accordingly, Hoosier's Motion to Compel is **GRANTED IN PART AND DENIED IN PART**.

In view of the difficult nature of the issues involved and the proper scope of discovery in an antitrust case of this magnitude, Hoosier's request for expenses, including attorneys' fees, is **DENIED**.

So **ORDERED** this 30th day of May, 2008.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:        Alan B. Rosenthal, Esquire
Babst, Calland, Clements & Zomnir
Email: arosenthal@bccz.com

Joseph Decker, Esquire
Babst, Calland, Clements & Zomnir
Email: jdecker@bccz.com

Thomas M. Schultz
Polymer Enterprises, Inc.
Email: tschultz@polymerenterprises.net

Deborah E. Pollack-Milgate, Esquire
Barnes & Thornburg
Email: dmilgate@btlaw.com

Donald E. Knebel, Esquire
Barnes & Thornburg
Email: dknebel@btlaw.com

Donna M. Doblick, Esquire
Reed Smith
Email: ddoblick@reedsmith.com

Kendall H. Millard, Esquire
Barnes & Thornburg
Email: kmillard@btlaw.com

Lynn C. Tyler, Esquire
Barnes & Thornburg
Email: lynn.tyler@btlaw.com

Jason E. Hazlewood, Esquire
Reed Smith
Email: jhazlewood@reedsmith.com

John R. Gotaskie, Jr., Esquire
Fox Rothschild LLP
Email: jgotaskie@foxrothschild.com