# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RACE TIRES AMERICA, INC., a Division of | ) | |
| SPECIALTY TIRES OF AMERICA, | ) | |
| SPECIALTY TIRES OF AMERICA, INC., | ) | |
| SPECIALTY TIRES OF AMERICA | ) | |
| (PENNSYLVANIA), INC., and | ) | |
| SPECIALTY TIRES OF AMERICA | ) | |
| (TENNESSEE), LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | 2: 07-cv-1294 |
| | ) | |
| v. | ) | |
| | ) | |
| HOOSIER RACING TIRE CORP., and | ) | |
| DIRT MOTOR SPORTS, INC., d/b/a | ) | |
| WORLD RACING GROUP, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

Before the Court for disposition are the following:

(i) the MOTION TO APPOINT SPECIAL MASTER REGARDING E-DISCOVERY
ISSUES filed by Plaintiffs Race Tires America, Inc., a Division of Specialty Tires of America,
Inc.; Specialty Tires of America, Inc.; Special Tires of America (Pennsylvania), Inc.; and
Specialty Tires of America (Tennessee), LLC (hereinafter referred to by the name of the parent
company, "STA") (*Document No. 290*), the BRIEF IN OPPOSITION TO THE MOTION TO
APPOINT SPECIAL MASTER REGARDING E-DISCOVERY ISSUES filed by Defendant
Dirt Motor Sports, Inc. d/b/a World Racing Group *(Document No. 291); and* the OPPOSITION
TO THE MOTION TO APPOINT SPECIAL MASTER REGARDING E-DISCOVERY
ISSUES filed by Defendant Hoosier Racing Tire Corp. (*Document No. 292); and*

(ii) the MOTION TO REVIEW TAXATION OF COSTS, with brief in support filed by
STA (*Document Nos. 285 and 286*), the OPPOSITION TO THE MOTION TO REVIEW

TAXATION OF COSTS filed by Defendant Hoosier Racing Tire Corp. (*Document No. 287*);

and the BRIEF IN OPPOSITION TO THE MOTION TO REVIEW TAXATION OF COSTS

filed by Defendant Dirt Motor Sports, Inc. d/b/a World Racing Group (*Document No. 288*).

After the close of briefing on the Motion to Review Taxation of Costs, both Plaintiff and

Defendant Hoosier Racing Tire Corp. have filed Notices of Supplemental Authorities.  (*See*

Document Nos. 294, 295, and 296.)


**A.**     <u>MOTION TO APPOINT SPECIAL MASTER REGARDING E-DISCOVERY ISSUES</u>

STA has requested that the Court appoint a Special Master to "address the technical

issues regarding the types of e-discovery fees claimed by defendants [ ] and the reasonableness

and necessity of" the e-discovery fees claimed as "costs" by Defendants.  Both Defendants

object to the request.

The Court finds STA's request to appoint a Special Master is unwarranted.  Federal Rule

of Civil Procedure 53(a)(1)(B) provides that a court may appoint a special master only to: "make

or recommend findings of fact on issues to be decided without a jury if appointment is warranted

by: (i) <u>some exceptional condition</u> . . . ." (emphasis added).  The Court finds that no such

exceptional condition exists to warrant the appointment of a Special Master.

STA argues that the assessment of e-discovery costs requires a level of technical

knowledge only available through an e-discovery special master.  The Court does not agree.  The

only "special expertise" required to resolve STA's Motion to Review Taxation of Costs is an

understanding that e-discovery has become a necessary and sometimes costly function of civil

litigation.  The Court is familiar with the costs associated with e-discovery and the techniques

used by the parties to capture relevant information.

However, the Court is very cognizant that in certain cases and under certain circumstances the appointment of a Special Master is appropriate in cases involving electronic discovery. To that end, on November 16, 2010, the Board of Judges of this Court approved the establishment of a list attorneys with expertise in electronic discovery to serve as Special Masters upon appointment by the Court. Effective March 15, 2011, the Court's Electronic Discovery Special Masters program was fully implemented. This program, however, is designed for the appointment of Special Masters at the beginning of the discovery process, not post-discovery during costs assessment. Additionally, the program was not in effect at the commencement of discovery in this case.

Turning back to the instant case, discovery of electronically stored information was considered in depth by the attorneys in this case before discovery commenced and the attorneys agreed upon and submitted an extensive proposed e-discovery Case Management Order, which the Court essentially adopted at the behest of counsel. As reflected in the Case Management Order, the attorneys were significantly involved in orchestrating their case and their e-discovery requirements.

E-discovery commenced and continued in accordance with the agreement of the parties and costs were incurred accordingly. Numerous discovery disputes occurred about the way and timing of production of documents, as later described herein, but the war waged on. Throughout the litigation, the Court attempted to rule on the discovery issues in conformance with the original understanding of the parties as expressed by counsel in the Case Management Order.

The Court finds that appointment of a Special Master at this late date in the litigation to review the reasonableness of the costs actually incurred by the parties would be unfair and

unreasonable as the costs incurred by the parties were mandated by one another and very difficult to control due to the demands of the parties.

Although this Court did not have a Special Master program at the time and the discovery costs incurred were not predictable or discussed with the Court in advance, in hindsight, a Special Master may have been advisable, but not practicable under the circumstances, especially with the lawyers in mutual control of the e-discovery process at the outset.

The Court finds and rules that the appointment of a Special Master for a retrospective after-the-fact review of the e-discovery costs actually incurred by the prevailing parties in this case would not be reasonable. The technical and legal issues have been fully briefed by the parties and addressed by the Clerk of Court, and, therefore, will be reviewed *de novo* by this Court. The Court concludes that referring this case to a Special Master at this late date would only delay the ultimate resolution of the matter at hand and bring about considerable added expenses for all involved, without necessarily resulting in any corresponding benefit to the parties.

**B.** **MOTION TO REVIEW TAXATION OF COSTS**

**Factual and Procedural History**

The facts and procedural history of this case are well known to the parties and previous opinions issued by this Court and the United States Court of Appeals for the Third Circuit detail the background relevant to this antitrust lawsuit. Thus, it is not necessary for the Court to revisit same here. Suffice it to say that STA, a tire supplier, initiated this litigation on September 25, 2007 when it filed a five-count Complaint against defendant Hoosier Racing Tire Corp. ("Hoosier"), a tire supplier competitor. Less than a month later, STA filed an Amended

Complaint in which it named Dirt Motor Sports, Inc. d/b/a World Racing Group ("DMS"), a motorsports racing sanctioning body, as an additional defendant.

Plaintiffs' claims arose out of the adoption of a so-called "single tire rule" by various sanctioning bodies in the sport of dirt oval track automobile racing, as well as the related exclusive supply contracts between some of these sanctioning bodies and Hoosier. STA claimed that it was owed damages in excess of $80 million[1] and that it was entitled to attorneys' fees.

On September 15, 2009, the Court granted summary judgment in favor of Hoosier and DMS finding that STA had failed to demonstrate that it had sustained an antitrust injury.

On October 23, 2009, STA filed a timely appeal to the United States Court of Appeals for the Third Circuit. On July 23, 2010, the Court of Appeals issued a fifty-one (51) page, precedential Opinion in which it affirmed this Court's rulings in favor of Hoosier and DMS.[2] On August 6, 2010, STA petitioned the appellate court for rehearing and rehearing *en banc*, which request was denied by the appellate court on August 18, 2010.

Hoosier and DMS each filed a Bill of Costs in which the majority of amounts requested involve e-discovery costs. Hoosier sought a total of $194,147.31, of which $143,007.05 was e-discovery costs. DMA sought a total of $274,765.13, of which $246,101.41[3] was e-discovery costs. STA filed objections to each Bill, the primary objection being that these costs were not

---

[1] STA alleged that one year's worth of damages was $7,620,690.00, and that it was entitled to treble damages for a four-year year period.

[2] On August 3, 2010, the appellate court issued an Order Amending Opinion Filed July 23, 2010, in which the phrase "and bright-line" was deleted from Page 42, first line of first full paragraph of the Opinion.

[3] STA represents that DMS claimed $329,051.41 in e-discovery consulting fees, which the Clerk reduced to $241,778.81. See Ps' Br. at 3. However, prior to the Taxation of Costs being issued by the Clerk of Court, DMS amended its request for e-discovery costs to $246,101.41. *See* DMS Reply Brief at 2 (Document No. 283). It was the amended request that the Clerk of Court reduced.

taxable pursuant to Title 28, United States Code, § 1920(4), as the statute does not authorize

e-discovery costs.  After careful consideration of the submitted Bills of Costs, the objections and

replies, and a review of the record, the Clerk of Court on January 24, 2011, issued his Taxation

of Costs (Document No. 284).  The Clerk of Court determined that Hoosier's e-discovery costs

should be taxed in the reduced amount of $125,580.55 and that DMS's e-discovery costs should

be taxed in the reduced amount of $241,788.81.

On January 30, 2011, STA filed its Motion to Review Taxation of Costs (Document No.

285), to which both Defendants have responded in opposition (Document Nos. 287 and 288), and

STA has filed a Reply Brief (Document No. 289).  STA seeks review of only one category of

taxed costs that the Clerk of Court allowed: the e-discovery costs.


## Standard of Review

The taxation of costs by the clerk of court is subject to *de novo* review by the district

court.  *Reger v. Nemours Found. Inc*., 599 F.3d 285, 288 (3d Cir. 2010).

Federal Rule of Civil Procedure 54(d) provides that "[u]nless a federal statute, these

rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed

to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  The Rule, as stated, is mandatory, and creates

a "strong presumption" that all costs authorized for payment will be awarded to the prevailing

party.  *Reger v. Nemours Found. Inc*., 599 F.3d 285, 288 (3d Cir. 2010) (quoting *In re Paoli R.R.*

*Yard PCB Lit*., 21 F.3d 449, 461 (3d Cir. 2000)).  "The losing party, therefore, bears the burden

of showing why costs should not be taxed against it."  *Adams v. Teamsters Local 115*, 678

F.Supp.2d 314, 324 (E.D. Pa. 2007).

The court may assess the following costs:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1932 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Accordingly, the court may tax only those costs authorized by statute. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444-45 (1987). However, the court has wide latitude to award costs, so long as the costs are enumerated in 28 U.S.C. § 1920, the general taxation-of-costs statute. *Id.* Ultimately, the district court has the discretion to award or deny costs. *See In re Paoli*, 21 F.3d at 458. However, "to overcome the presumption favoring the prevailing party and to deny that party costs, a district court must support that determination with an explanation." *Id.* at 462. "Only if the losing party can introduce evidence, and the district court can articulate reasons within the bounds of its equitable power, should costs be reduced or denied to the prevailing party." *Id.* at 468.

Section 1920(4) refers to exemplification and copying of materials "necessarily obtained for use in the case." 28 U.S.C. § 1920(4). A finding that costs incurred were "necessary" to the proceedings requires more than mere assertions from the party requesting payment. The dividing line between "necessary" and "for the convenience of counsel," however, is not particularly well

established. Some courts have rejected the costs of electronic scanning of documents as a mere "convenience." *See Roehrs v. Conesys, Inc.*, No. 3:05-CV-829, 2008 WL 755187, at *3 (N.D. Tex. Mar. 21 2008) (scanning of documents into electronic format for "convenien[ce] for counsel" was not "necessary," and thus not a recoverable costs); *but see Cargill Inc. v. Progressive Dairy Solutions, Inc.*, No. CV-F-07-0349, 2008 WL 5135826, at *6 (E.D. Cal. Dec. 8, 2008) (where "case management was done electronically because of the volume of documents, [and] scanning of documents was necessary to provide an adequate defense to the several motions and trial presentation," such costs were recoverable).

As summary judgment was granted in favor of Hoosier and DMS and affirmed on appeal, they are the prevailing parties entitled to recover costs. Therefore, as the prevailing parties, Hoosier and DMS bear the burden of showing that the requested costs are allowable under § 1920. Once the prevailing party has met this burden, the burden shifts to the party or parties that did not prevail to identify any impropriety of taxing the proposed costs.

STA seeks the Court's review of only one category of costs that the Clerk of Court allowed – costs incurred by Defendants in connection with e-discovery.

## Discussion

The Bills of Costs in this case, and the objections thereto, are best understood in the context of this lawsuit, which was affected by considerable tension among counsel, most often involving the issue of production of e-discovery. In fact, after the parties had filed their fifth discovery-related motion,[4] the Court noted that it was "compelled to comment on what appears

---

[4] *See* (i) Motion to Compel Production of Documents from Charles Roberts and Hoosier Tire South Dirt Oval filed by STA (Document No. 40); (ii) Motion for Attorney Fees for Charles Roberts filed by Hoosier (Document No. 42); (iii) Motion to Compel Production of Electronically Stored Information from Dirt Motor Sports, Inc. filed by STA (Document No. 47); (iv) Motion to Compel Information and Documents in Response to Written Discovery filed by

to be a situation which has gone awry." *See* Memorandum Order of June 16, 2008. This admonishment, however, did not result in the elimination of discovery disputes. Rather, between September 2008 and December 2008, the parties filed six (6) additional discovery motions.[5]

From the outset of this litigation, all parties and the Court anticipated that discovery would be in the form of electronically stored information ("ESI"). In fact, in keeping with the Rule 26(f) Report of the Parties, the Court entered a detailed and exhaustive Case Management / Scheduling Order which specifically addressed ESI, and required that electronic records be produced in a specific format according to explicit parameters as directed and agreed upon by counsel, *to wit*:

> (7)  On or before January 25, 2008, the parties will endeavor to agree upon an initial list of keywords to be used to search ESI for potentially discoverable evidence. This list may be updated during the litigation, without waiver of any party's right to object or to seek relief pursuant to the Federal Rules of Civil Procedure or the Local Rules of the Western District of Pennsylvania. A party's use of the agreed-upon keywords to search ESI will be deemed to be sufficient to comply with the party's obligation to conduct a reasonable search.

---

Hoosier (Document No. 50); and Motion to Compel Hoosier Racing Tire Corp. to Produce Documents and Electronically Stored Information by A Date Certain filed by STA (Document No 61).

[5]  Motion for Determination that Dirt Motor Sports, Inc. Waived Any Assertion of Privilege as to Documents Produced in Discovery filed by STA (Document No. 90); Motion to Compel Production of Its Potentially Privileged Documents In Advance of Oral Argument filed by Hoosier (Document No. 111) and joined by DMS (Document No. 113); Motion to Compel Production of the 177 Potentially Privileged Documents Identified by Plaintiff filed by DMS (Document No. 117) and joined by Hoosier (Document No. 118); Motion to Compel Responses to Document Requests, Interrogatories and Requests for Admissions Directed to Dirt Motor Sports, Inc. filed by STA (Sealed Document No. 125); Motion to Determine Sufficiency of Responses to Request for Admissions and to Compel Responses to Discovery Responses Directed to Hoosier Racing Tire Corp. filed by STA (Sealed Document No. 140); and Motion for Leave to Take in Excess of Ten Depositions filed by STA (Sealed Document No. 158).

(8)     The parties will endeavor to agree upon a stipulated protective order that will provide for the immediate return of privileged documents and ESI if it appears on its face to be inadvertently produced.

(9)     Electronically Stored Information (ESI)

The parties will exchange responsive and discoverable ESI in the following format:

ESI will be produced in "Tagged Image File Format (tif. or tiff.)" with a Summation load file according to the following specifications:

A.     All .tif formatted documents will be single page, black and white, Group 4 .tif images.

B.     A cross reference or unitization file, in standard format (e.g. Opitcon, Summation DII, or the like) showing the Bates number of each page and the appropriate unitization of the documents, will accompany each delivery.

C.     The following metadata fields associated with each electronic document will be produced where reasonably available:

> BegDoc
> EndDoc
> BegAttach
> EndAttach
> !FS_DateCreated
> !FS_DateLastModified
> !FS_Extension
> !FS_Filename
> !FS_Path
> !FS_Size
> Author
> BCC
> CC
> Company
> Custodian Name
> Date Created
> Date Last Modified
> Doc Type/extension
> Email_Attachment Count
> Email_Attachment Name

Email_Received Date
Email_Sent Date
Email_Topic (i.e., subject line)
From
Recipient
Spreadsheet_Sheet Names
Spreadsheet_Sheets
Spreadsheet_Total Pages
Subject (if field is populated)
Title (if field is populated)
!FS_Attributes
Date Last Printed
Edit Time

D.      An extracted text file or searchable version will be produced for each electronic document in a document level text file (except for any file produced in native format).

E.      Each party agrees to produce Excel spreadsheets in native file, and to produce other files in native file to the extent reasonably necessary to enable the other parties to review those files.  For example, if native files are necessary for non-printable files (mpg, wav, mdb, etc), they should be produced as native files.  Native files should be numbered in the file name (without destroying the file name) and produced in a separate folder with a cross reference file in the format mentioned above in subparagraph 9(C).  For every other file, no native file shall be required.

F.      In the event proprietary software is used (especially for accounting/financial data), the opposing party will either be provided with a copy of the necessary software, or the data will be transferred to an Excel (or other appropriate, but commonly accessible) file.

Case Management / Scheduling Order (Document No. 23); *See also* Fed.R.Civ.P. 26(f) Report of the Parties (Document No. 22).

A.      <u>E-Discovery Costs and Section 1920(4)</u>

Title 28, United States Code, section 1920(4), allows recovery of "[f]ees for exemplification and the costs of making copies of any materials where the materials are

necessarily obtained for use in the case."[6]  "The terms 'exemplification' and 'copying' originated in and were developed in the world of paper.  One issue is how to apply these § 1920 terms to the world of electronically stored information."  *Kellogg Brown & Root Int'l v. Altanmia Commercial Marketing Co.*, Civil Action No. H-07-2684, 2009 WL 1457632 *3 (N.D. Tex. 2009).

Some courts have defined the terms "narrowly," focusing solely on "physical preparation and duplication of documents, not the intellectual effort involved in their production."  *Romero v. City of Pomona*, 883 F.2d 1418, 1428 (9th Cir. 1989) ("Section 1920(4) speaks narrowly of '[f]ees for exemplification and copies'"), *overruled in part on other grounds by Townsend v. Holman Consulting Corp.*, 914 F.2d 1136, 1141 (9th Cir. 1990).

Other courts have taken a broader view taking into account changes in technology.  *See Hecker v. Deere & Company*, 556 F.3d 575 (7th Cir. 2009) (finding no abuse of discretion in

---

[6]  Prior to 2008, district courts struggled with the issue of whether e-discovery costs were recoverable under Section 1920(4).  In 2008, Congress changed the relevant language of Section 1920(4) from "[a] judge or clerk of any court of the United States may tax as costs the following: . . . fees for exemplifications and <u>copies of papers</u>" to "fees for exemplification and the costs of making copies of <u>any materials</u>."  Judicial Administration and Technical Amendments Act of 2008, Pub. L. No. 110-496, § 6, 122 Stat. 4291, S. 3596 (emphasis added).  After the amendment, no court has categorically excluded e-discovery costs from allowable costs.

However, even before the 2008 congressional modification to Section 1920, courts in many jurisdictions had come to recognize that "exemplification," in the modern era, includes electronic copying.  *See, e.g., Cefalu v. Village of Elk Grove*, 211 F.3d 416, 427-28 (7th Cir. 2000) (explaining that exemplification "signifies the act of illustration;": so long as "the means of presentation furthers the illustrative purposes of an exhibit  . . . it is potentially compensable"); *BDT Prod. Inc. v. Lexmark Int'l Inc.*, 405 F.3d 415, 420 (6th Cir. 2005) (finding that "electronic scanning and imaging" may constitute "exemplification," within the meaning of Section 1920); *Brown v. McGraw-Hill Co.'s Inc.*, 526 F. Supp.2d 950, 959 (N.D. Iowa 2007) (finding that "the electronic scanning of documents is the modern day equivalent" of 'exemplification and copies of paper' as set forth in Section 1920; *El  Dorado Irrigation Dist. v. Traylor Bros., Inc.*, No. CIV. S-03-949, 2007 WL 512428, at *10 (E.D. Cal. 2007) ("[S]canning is akin to copying.  The purposes of the two methods are largely the same, to reproduce a document so that it may also be utilized by multiple parties and individuals.").

district court awarding costs to defendant in the amount of $164,814.43 for converting computer data into readable format in response to plaintiffs' discovery requests); *Cefalu v. VIllage of Elk Grove*, 211 F.3d 416, 428 (7th Cir. 2000) (finding "no limits inherent in the term 'exemplification' that would . . . preclude [a court] from compensating a party for . . . computer-based, multimedia displays," and that "[t]his approach allows appropriate room for the more sophisticated types of multi-media presentations made possible by technological advances."); *Parrish v. Mannatt, Phelps, & Phillips, LLP*, Civil Action No. C 10-03200, 2011 WL 1362112 (N.D. Cal. Apr. 11, 2011) (finding that invoices from electronic discovery vendors were properly taxable as "plaintiffs propounded document requests and sent subpoenas to defense counsel, pressuring defendants to get cracking on their document production" and thus, the "reproduction costs defendants incurred in collecting, reviewing, and preparing client documents for production were necessary expenditures made for the purpose of advancing the investigation and discovery phases of the action.").

The United States Court of Appeals for the Third Circuit has not yet addressed the issue of whether e-discovery costs are taxable pursuant to 28 U.S.C. § 1920(4).

However, the United States Court of Appeals for the Sixth Circuit has held that electronic scanning and imaging could be interpreted as "exemplification and copies of papers." *BDT Products, Inc. v. Lexmark International, Inc.*, 405 F.3d 415, 420 (6th Cir. 2005) (finding no abuse of discretion in the district court's taxing of copying costs based on electronic scanning and imaging). In *Brown v. McGraw-Hill Cos*., Inc., 526 F. Supp.2d 950 (N.D. Iowa 2007), the district court held that "electronic scanning of documents is the modern-day equivalent of 'exemplification and copies of paper,' and therefore, can be taxed pursuant to § 1920(4)." *Id*. at 959.

District courts have also held that the cost of scanning documents for use in electronic format is for the convenience of counsel and not "necessary" for use in the case. *See Roehrs v. Conesys, Inc.*, 2008 WL 755187, at *3 (N.D. Tex. Mar. 21, 2008)(rejecting argument that scanned digital versions of paper documents were "merely only more convenient for counsel to search and examine").

In *Fells v. Virginia Dept. of Transp.*, 605 F.Supp.2d 740, 741 (E.D. Va. 2009), the defendant sought to recover the costs of "electronic records initial processing, Metadata extraction, [and] file conversion." The court rejected defendant's request contrasting the scanning of documents in a case like *BDT Products* to convert "a paper document into an electronic document," from the techniques the defendant used to "create electronically searchable documents." *Id*. at 743. The court refused to extend exemplification and copying in § 1920(3) to cover "techniques and processing records, extracting data, and converting files, which served to create searchable documents, rather than merely reproduce paper documents in electronic form." *Id.* at 743-44. *See also Francisco v. Verizon South, Inc.*, --- F.R.D. ---, Civil Action No. 09-cv-737, 2011 WL 781933 (E.D. Va. March 2, 2011) (rejecting requests for costs because the methods employed in the case (putting emails into readable format) more closely resembled the methods employed in the *Fells* case, rather than the scanning method employed in the *BDT Products* case.); *Mann v. Heckler & Koch Defense, Inc.*, Civil Action No. 08-cv-611, 2011 WL 1599580 (E. D. Va. April 82, 2011) (court rejects request for costs finding that where documents were always in an electronic format, the process of burning the documents onto a CD is "copying" rather than "creating.")

Similarly, in *Klayman v. Freedom's Watch, Inc.*, 2008 WL 5111293 (S.D. Fla. Dec. 4. 2008), the defendants attempted to recover costs for work performed by an outside consultant to

collect electronic documents for discovery. *Id*. at *2. The court observed that "defendants hired experts at a huge hourly cost to search for and retrieve discoverable electronic documents," which, "[i]n a non-electronic document case[,] . . would be performed by paralegals and associate attorneys and would not be compensable as costs under 28 U.S.C. § 1920." *Id. See also Kellogg Brown & Root International, Inc. v. Altanmia Commercial Marketing Co., W.L.L.*, 2009 WL 1457632 (S.D. Tex. 2009) (claim for electronic discovery costs denied because steps vendor performed in "extracting data from an electronic medium and storing that data for possible use in discovery is more like the work of an attorney or legal assistant in locating and segregating documents that may be responsible to discovery than it is like copying those documents for use in the case.")[7]

However, there are a number of decisions which have taxed costs because the court found that the steps the third-party vendor performed appeared to be the electronic equivalents of exemplification and copying. For example, in *CBT Flint Partners, LLC v. Return Path, Inc.*, 676 F.Supp.2d 1376, 1380-81 (N.D. Ga. 2009), the district court overruled and denied plaintiff's objection to the taxation of costs in fees that defendant incurred for its "e-discovery vendor." The defendant had "retained a computer consultant to collect, search, identify, and help produce electronic documents from [defendant's] network files and hard drives in response to [plaintiff's] discovery requests. The district court held that the entire $243,453.02 paid to the e-discovery vendor was recoverable under § 1920 because the services of the vendor "are the 21st Century equivalent of making copies." *Id*. at 1381. In allowing full recovery for the e-discovery costs, the court further held that "[t]he services are certainly necessary in the electronic age," and that

---

[7] Unlike the present case, much of the extraction and storage work performed by the vendor was performed either before the discovery request issued or after the court's ruling ended the discovery process. *Kellogg Brown & Root International*, 2009 WL 1475632 at* 5.

the services "are highly technical" and "are not the type of services that attorneys or paralegals are trained for or are capable of providing." *Id.* *See also Cargill Inc. v. Progressive Dairy Solutions, Inc.,* No. CV-F-07-0349, 2008 WL 5135826 at *6 (E.D. Cal. Dec. 8, 2008) ("Progressive provides an explanation of the invoice - case management was done electronically because of the volume of documents; scanning of documents was necessary to provide an adequate defense to the several motions and trial presentation. Accordingly, this cost[] is recoverable.")

Similarly, in *Neutrino Dev. Corp. v. Sonosite, Inc.*, 2007 U.S. Dist. LEXIS 23464, at *12 (S.D. Tex. Mar. 30, 2007), the district court held that "[t]his electronic production in response to Plaintiff's discovery request falls within costs recoverable for 'fees and disbursements for printing,' 28 U.S.C. § 1920(3), and therefore the Court will overrule Plaintiff's objection."

In another instance, a district court held that § 1920(4) allows for the taxation of costs incurred for "the creation of a litigation database." *Lockheed Martin Idaho Technologies Co. v. Lockheed Martin Advanced Environmental Systems, Inc.*, 2006 WL 2095876 at *2 (D. Idaho July 27, 2006). The *Lockheed* court allowed costs to be taxed in the amount of $4.6 million with respect to that litigation database, which was in addition to the $800,000 it allowed in costs for trial evidence presentation and copies. *Id.* *But see Fells*, 605 F.Supp.2d at 741 (court did not allow defendant to recover costs associated with creating a database that would facilitate discovery because "defendant abandoned the project.").

Moreover, and significant to the case *sub judice*, courts have allowed a prevailing party to recover the costs of converting paper documents into electronic files where the parties agreed that responsive documents would be produced in an electronic format. *See Fast Memory Erase, LLC v. Spansion, Inc.*, No. 3-10-CV-0481, 2010 WL 5093945 (N.D. Tex. Nov. 10, 2010);

*Rundus v. City of Dallas*, 2009 WL 3614519 (N.D. Tex. Nov. 2, 2009), *aff'd*, 634 F.3d 309 (5th Cir. 2011); *see also Neutrino Development Corp. v. Sonosite, Inc.,* No. H-01-2484, 2007 WL 998636 at *4 (S.D. Tex. Mar. 30, 2007) (where electronic data was produced by agreement, in lieu of paper copies, the cost of production was recoverable under § 1920).

Turning to the facts of this case, it is undisputed that Defendants produced to Plaintiff a massive quantity of ESI in response to written discovery requests. As discussed *supra*, the parties had previously agreed that document production would be made in electronic format.

STA aggressively pursued e-discovery under the Case Management Plan . For example, STA directed 273 discovery requests to DMS, including 119 separate requests for documents and ESI. *See* Br. of DMS (Document No. 288 at 6). Capitol City, the vendor for DMS, copied 490 gigabytes of electronic data and over 270,000 files from DMS' servers. *Id.* During the collection process, STA imposed – over DMS's objections – over 442 search terms. During an initial search by Capitol City of DMS's computers in May 2008, 274 keywords searched resulted in over seven million "hits" upon possibly relevant and responsive ESI files. *See* DMS Reply Br. in Support of Its Bill of Costs at 4 (Document No. 283).

Hoosier created a litigation database for the purpose of complying with the e-discovery requirements of the Case Management Plan. Hoosier engaged computer experts to forensically collect and image hard drives, scan documents to create electronic images, process and index electronic discovery data, extract the required metadata fields from electronic records, enable documents to be OCR searchable, and convert documents to the required .tif format.

Notably, neither DMS nor Hoosier is seeking reimbursement for any legal fees charged by the attorneys and/or paralegals who reviewed documents to determine responsiveness, privilege, and confidentiality designations for the processed documents. Rather, Defendants are

seeking the costs they paid to their third party vendors to produce electronic documents as requested by STA. There is no indication that electronic scanning was used merely for the convenience of the parties or the attorneys. STA requested, and Defendants produced, a massive quantity of data. A careful review of the vendor's invoices reveals that the services provided were not the type of services that attorneys or paralegals are trained for or are capable of providing. The services were highly technical.

Courts have distinguished between costs incurred to allow a party to present non-electronic evidence electronically, such as scanning, imaging, and conversion of non-electronic materials, the type of costs allowed in *BDT Products*, and costs incurred to improve the format and design of electronic evidence. The latter costs tend to serve a party's aesthetic preferences rather than exemplification of evidence; they have "less to do with conveying information to judge and jury than . . . with an effort to wow them." *Cefalu,* 211 F.3d at 418 ("Courts recognize that the losing party is not required to pay for the prevailing party's 'glitz'." *Stryker Corp. v. XL Ins. America, Inc*., 726 F.Supp.2d 754, 772 (W.D. Mich. 2010).

In this case, the Court finds that the requirements and expertise necessary to retrieve and prepare these e-discovery documents for production were an indispensable part of the discovery process.[8]

For all these reasons, the Court finds and rules that STA's objection to taxation of the e-discovery costs will be denied.

---

[8] In support of its position that the third party vendor costs were not necessary, STA relies heavily upon the decision in *Krouse v. American Sterilizer Co*., 928 F. Supp. 543 (W.D. Pa. 1996), wherein the district court disallowed photocopying costs as those are considered in the Western District of Pennsylvania to be normal office expenses and part of the costs of litigation. However, as the Clerk of Court noted, the costs incurred in retrieving and preparing the e-discovery documents in this case are quite distinguishable from the photocopy costs incurred in *Krouse.*

B.    Fees Charged by E-Discovery Vendors Are Reasonable and Necessary

Despite the apparent mandate in Rule 54 that the prevailing party must always receive its costs, the United States Supreme Court has made clear that requests for costs be given "careful scrutiny" to ensure compliance with the statute. *Farmer v. Arabian Am. Oil Co*, 379 U.S. 227, 235 (1964), *rev'd in part on other grounds, Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987) (rules do not give district courts "unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur"). Thus, a district court necessarily must access the reasonableness of any fees and costs requested and the party requesting such fees and costs carries the burden of showing that the requested costs were necessarily incurred and reasonable.

Neither Rule 54(d) nor Section 1920 require compensation for exemplification and copying at any specified statutory rate. The Advisory Committee Notes to Rule 54, largely addressing the separate question of attorney's fees, do suggest that "local rates" or "customary rates" should generally determine the appropriateness of an award.

STA argues, *arguendo,* that if the third-party vendor fees are allowed, the fees charged by Defendants' vendors are exorbitant and unreasonable. At the outset, the Court notes that in support of its position, STA relies upon the affidavit of the President of a local e-discovery and computer forensics consulting firm. Reliance upon this affidavit is of concern to the Court, however, insofar as the Vice-President and General Counsel of the consulting firm is also lead counsel for STA in this litigation. Additionally, lead counsel is the husband of the Chief Executive Officer of the consulting firm and is the brother-in-law of the above referenced affiant. Although the Court recognizes the expertise of the affiant and the bona fides of the consulting firm, it will not accord significant reliance on this affidavit.

1.     *Hoosier*

It appears from the invoices submitted by Hoosier that Preferred Imaging ("PI") imaged nineteen (19) hard drives and processed data from five (5) custodians. The invoices reflect that PI extracted data, processed data, loaded data, and performed all tasks associated with putting electronic documents in the position to be produced to STA. As required by the Case Management Order, STA was provided with electronic information that included metadata relating to each record and each record was immediately key-word searchable, meaning that STA did not have to examine each document word-for-word to find relevant documents by witness or subject matter.

STA contends that the vendor invoices include exorbitant hourly rates and charges.[9] After reviewing the record *de novo*, the Court does not find this to be the case. The costs sought by Hoosier for e-discovery are all within the parameters set forth in the case law. For example, the defendant in *CBT* sought $243,453.02 in fees to compensate for payments to its e-discovery vendor. *CBT*, 676 F. Supp.2d at 1380. As one district court has noted, it is unlikely that a party would "increase its costs unnecessarily without knowing that it would prevail at trial." *Petersen v. Union Pac. R.R. Co.*, 2009 WL 2163470 at *4 (C.D. Ill. July 17, 2009).

STA also objects to two separate invoices – one dated June 2, 2008, and another dated March 10, 2008, as failing to set forth the full basis for the charges assessed to Hoosier. Copies of the complete invoices have been resubmitted to the Court and said invoices clearly add up to the full charges assessed to Hoosier.

The Clerk of Court taxed Hoosier's e-discovery fees in the reduced amount of $125,580.55. The Court has examined Hoosier's requests for costs, STA's objections thereto,

---

[9] Interestingly, STA's consulting firm's affidavit acknowledges that its "fees for imaging the hard drives would have been comparable to those charged by PI." Af. at ¶ 8.

the Clerk's Taxation of Costs, STA's request for review, Hoosier's opposition to the request for review, and the relevant case law. The Court finds that the Clerk of Court carefully examined Hoosier's request and cited the relevant law which supports the award of costs. After a *de novo* review of the Clerk's Taxation of Costs, the Court concludes that the award of costs should be affirmed.

    2.    *DMS*

    Capitol City imaged four (4) DMS' servers which contained 490 gigabytes of electronic data and over 270,000 files. A cursory review of the servers reflected that the contents were a "mix of native files – Word, Excel, Zip, JPG pictures, music files (sound), HTML (web), etc." *See* DMS Br., Exh. 4. STA comments that DMS produced documents in "native format, not .tiff, with no searchable text load file, etc." Pl's Mot. at 9. DMS explains that the estimated cost to further process and prepare for review the massive amount of ESI into .tiff format would have cost "$1 million - $1750 per gigabyte x 500 gigabytes." DMS Br., Exh. 4.

    STA also contends that DMS overstated the Capitol City fees. However, DMS explains that the amended Bill of Costs it submitted listed correctly its actual e-discovery costs as $246,101.41. The costs sought by DMS for e-discovery are all within the parameters set forth in the case law. Again, the Court notes that it is unlikely that a party would "increase its costs unnecessarily without knowing that it would prevail at trial." *Petersen v. Union Pac. R.R. Co.*, 2009 WL 2163470 at *4 (C.D. Ill. July 17, 2009).

    The Clerk of Court taxed DMS's e-discovery fees in the reduced amount of $241,778.81. The Court has examined DMS's requests for costs, STA's objections thereto, the Clerk's Taxation of Costs, STA's request for review, DMS's opposition to the request for review, and relevant case law. The Court finds that the Clerk of Court carefully examined DMS's request

and cited the relevant law which supports the award of costs. After a *de novo* review of the Clerk's Taxation of Costs, the Court concludes that the award of costs should be affirmed.

## CONCLUSION

Although the amount of costs assessed in this action is significant, the assessment is reflective of the amounts incurred by the prevailing parties without respect to their anticipation of being prevailing parties and, in that regard, can hardly be considered as "puffed," exorbitant, or contrived. Such costs were, in fact, incurred – and in significant respects at the discovery demands of Plaintiffs. Although a reasonable defense to the imposition and request of the prevailing party for costs can be the actual inability to pay said costs, such defense has not been raised by the non-prevailing party here and, therefore, will not be considered in greater detail.

On a final note, as the Memorandum Opinion reflects, the facts and circumstances of this case were unique and for that reason, this Memorandum Opinion should not be read as a pronouncement or representation of how this Court or any other member of this Court will rule on future disputes regarding costs of e-discovery.

For the reasons explained *supra*, the Motion to Appoint Special Master Regarding E-Discovery Issues will be denied. The Motion for Review Taxation of Costs will be granted to the extent that the Court has reviewed *de novo* the Taxation of Costs and will be denied to the extent that STA requests that the claimed e-discovery fees not be allowed under 28 U.S.C. § 1920(4). Accordingly, the Taxation of Costs entered by the Clerk of Court on January 24, 2011, will be affirmed.

An appropriate Order follows.

McVerry, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RACE TIRES AMERICA, INC., a Division of )
SPECIALTY TIRES OF AMERICA, )
SPECIALTY TIRES OF AMERICA, INC., )
SPECIALTY TIRES OF AMERICA )
(PENNSYLVANIA), INC., and )
SPECIALTY TIRES OF AMERICA )
(TENNESSEE), LLC, )
                                     )
              Plaintiffs,           )       2: 07-cv-1294
                                       )
       v.                        )
                                       )
HOOSIER RACING TIRE CORP., and )
DIRT MOTOR SPORTS, INC., d/b/a )
WORLD RACING GROUP, )
                                     )
              Defendants.        )

## ORDER OF COURT

**AND NOW,** this 6th day of May, 2011, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

(1)      Plaintiffs' Motion to Appoint Special Master Regarding E-Discovery Issues is **DENIED**; and

(2)      Plaintiffs' Motion to Review Taxation of Costs is **GRANTED IN PART AND DENIED IN PART** as follows:

      (a)      The request that the Court conduct a *de novo* review of the Taxation of Costs issued by the Clerk of Court is **GRANTED**; and

      (b)      The request that the claimed e-discovery costs not be allowed under 28 U.S.C. § 1920(4) is **DENIED**.

The Award of Costs as reflected in the Taxation of Costs issued by the Clerk of Court is

**AFFIRMED.**

BY THE COURT:


s/ Terrence F. McVerry
United States District Court Judge


cc:    Robert V. Barth, Jr.
Clerk of Court
United States District Court for the
Western District of Pennsylvania

Alan B. Rosenthal, Esquire
Babst, Calland, Clements & Zomnir
Email: arosenthal@bccz.com

Joseph Decker, Esquire
Babst, Calland, Clements & Zomnir
Email: jdecker@bccz.com

Mark K. Dausch, Esquire
Babst, Calland, Clements and Zomnir, P.C.
Email: mdausch@bccz.com

Mark D. Shepard, Esquire
Babst, Calland, Clements & Zomnir
Email: mshepard@bccz.com

Thomas M. Schultz
Polymer Enterprises, Inc.
Email: tschultz@polymerenterprises.net

Aaron M. Staser , Esquire
Barnes & Thornburg
Email: astaser@btlaw.com

Deborah E. Pollack-Milgate, Esquire
Barnes & Thornburg
Email: dmilgate@btlaw.com

Donald E. Knebel, Esquire
Barnes & Thornburg
Email: dknebel@btlaw.com

Donna M. Doblick, Esquire
Reed Smith
Email: ddoblick@reedsmith.com

Kendall H. Millard, Esquire
Barnes & Thornburg
Email: kmillard@btlaw.com

Lynn C. Tyler, Esquire
Barnes & Thornburg
Email: lynn.tyler@btlaw.com

Jason E. Hazlewood, Esquire
Reed Smith
Email: jhazlewood@reedsmith.com

John R. Gotaskie , Jr., Esquire
Fox Rothschild LLP
Email: jgotaskie@foxrothschild.com

Theodore H. Jobes, Esquire
Fox Rothschild LLP
Email: tjobes@foxrothschild.com